**UNITED STATES, Appellee,**

v.

**Private (E–2) Kelley J. KISH, 003–54–1278, United States Army, Appellant.**

**SPCM 19113.**

U.S. Army Court of Military Review.

13 May 1985.

Colonel R. Rex Brookshire II, JAGC, Captain Thomas J. Feeney, JAGC, and Captain Barbara M. Lederer, JAGC, were on the pleadings for appellant.

Colonel James Kucera, JAGC, Lieutenant Colonel John T. Edwards, JAGC, and Major Thomas J. Leclair, JAGC, were on the pleadings for appellee.

Before WOLD, FELDER and NAUGHTON, Appellate Military Judges.

## OPINION OF THE COURT

WOLD, Senior Judge:

Appellant was convicted, by a military judge sitting as a special court-martial, of four specifications of absence without leave from her unit at Fort Benning, Georgia, in violation of Article 86, Uniform Code of Military Justice, 18 U.S.C. § 886 (1982).

At a pretrial hearing,[1] trial defense counsel moved for a sanity board pursuant to paragraph ·121, Manual for Courts-Martial, United States, 1969 (Revised edition) (amended by Change 3, 1 Sep. 1980), to inquire into appellant's mental responsibility for an unauthorized absence from 12 July 1982 until 27 July 1982 alleged in Specification 1, Additional Charge I. In support of this request, the defense presented testimony from two of appellant's friends that during the days just preceeding 12 July appellant appeared suicidal and irrational, suffered severe mood swings and bouts of shaking, and appeared to be in danger of a nervous breakdown. Appellant testified that shortly before 12 July she had been referred to mental health authorities several times, felt emotionally unstable, and heard voices when no one appeared to be speaking. She also

---

1. Article 39(a), UCMJ, 18 U.S.C. § 839(a).

testified that she did not remember leaving Fort Benning on 12 July or traveling to New Hampshire where she found herself seven to ten days thereafter.

The prosecution called appellant's company commander, who testified that appellant had functioned normally prior to 12 July and that screening personnel at the post mental health facility had reported that appellant's mental condition was basically normal, not suicidal. A psychiatric social worker testified that he had seen appellant on 6, 7, and 8 July and found her mildly upset and entertaining suicidal fantasies, but that he found no sign that she was suffering from a mental disease or defect.

Evidence from both parties showed that in addition to any other possible problems, appellant was upset at the time because of a separation from her husband.

The trial judge declined to order a sanity board for further inquiry into appellant's mental responsibility. Appellant then entered pleas, including a plea of not guilty to Specification 1, Additional Charge I, and obtained a continuance to prepare a mental responsibility defense.

Three days later, at the next session of the trial, appellant entered a plea of guilty to Specification 1, Additional Charge I. During the providence inquiry which fol-

lowed, appellant contradicted her earlier claim of amnesia and stated that her absence was accomplished with full knowledge of the nature of her acts.[2]

Based on these facts, we specified the following issues:

### I

Did the trial judge err by denying appellant's request for a sanity board? *See United States v. Dobson,* 16 U.S.C.M.A. 236, 36 C.M.R. 392 (1966); *United States v. Nix,* 15 U.S.C.M.A. 578, 36 C.M.R. 76 (1965).

### II

Did appellant's subsequent plea of guilty, coupled with her statements during the providence inquiry, waive or withdraw appellant's earlier request for a sanity board or vitiate what might have been a valid basis for such a request?

### III

In light of the evidence adduced in support of the motion for a sanity board, did the trial judge err in accepting appellant's plea of guilty to Specification 1 of the first Additional Charge?

2. MJ: What happened on 12 July?
ACC: I left my unit[,] the 444th Transportation Company.
MJ: Did you believe you had any authorization to leave your unit?
ACC: No, Your Honor.
MJ: Had you sought any authorization?
ACC: No, Your Honor.
MJ: Where did you go?
ACC: Up to New Hampshire to the White Mountains, Your Honor.
MJ: And how long did you stay there?
ACC: Until 27 July 1982.
MJ: What happeneded on 27 July?
ACC: We turned ourselves [in at] Fort Benning, sir.
MJ: What did you do during the period 12 July to 27 July?
ACC: Stayed up in the White Mountains and camped out.
      *    *    *    *    *    *
MJ: And ... you have a clear recall of leaving Fort Benning on 12 July 1982, is that correct?
ACC: Yes, Your Honor.

MJ: Very well, do you remember travelling to New Hampshire?
ACC: Yes, Your Honor.
MJ: How did you travel there?
ACC: By bus.
MJ: Who were you with?
ACC: My husband.
MJ: Do you have any trouble recalling those events?
ACC: No, Your Honor.
MJ: I take it then that even though you were emotionally upset at the time, you do have a clear recall of what you did?
ACC: Yes, Your Honor.
MJ: And you did those things with full knowledge of what you were doing?
ACC: Yes, Your Honor.
      *    *    *    *    *    *
MJ: You think you've had enough time and opportunity now to discuss your case and prepare a defense with [your defense counsel]?
ACC: Yes, Your Honor.

We hold that the trial judge erred by denying appellant's request for a sanity board and that appellant's plea did not waive this error, but that appellant's assertions during the providence inquiry constituted a withdrawal of her earlier request and negated the factual assertions on which it was based. We therefore also hold that appellant's plea was provident.

## I

Paragraph 121, Manual for Courts-Martial, 1951, provided in pertinent part:

> If it appears to any commander who considers the disposition of charges ... or to any investigating officer ..., trial counsel, or defense counsel that there is reason to believe that the accused is insane ... or was insane at the time of the alleged offense ..., that fact and the basis of the observation should be reported through appropriate channels in order that an inquiry into the mental condition of the accused may be conducted.... *When the report indicates substantial basis for the belief,* the matter will be referred to a board of one or more medical officers for their observation and report with respect to the sanity of the accused. At least one member of the board should be a psychiatrist. (Emphasis supplied).

The Manual for Courts-Martial, United States, 1969 (Revised edition) (amended by Change 3, 1 Sep. 1980), under which appellant's case was tried, contained parallel provisions, but substituted the following language in paragraph 121 for that italicized above:

When the report ... indicates a reasonable basis for such inquiry, ....

In *United States v. Nix,* 36 C.M.R. 76 (C.M.A.1965), the United States Court of Military Appeals construed paragraph 121 of the 1951 Manual for Courts-Martial to be "in substantial accord" with former section 4244, Title 18, United States Code,[3] and to require a sanity board upon request by one of the named officials "if [the motion] is not frivolous and is made in good faith." *United States v. Nix,* 36 C.M.R. at 79, 80.

> When the claim of insanity is not frivolous, to allow the court to determine that there is no cause to believe that an accused may be insane or otherwise mentally incompetent would be inconsistent with the legislative purpose [of 18 U.S.C. § 4244] to provide for the detection of mental disorders "not ... readily apparent to the eye of the layman."

*Id.* at 81 (footnote omitted) (quoting *Wear v. United States,* 218 F.2d 24, 26 (CA DC Cir.1954).

The government contends that the change in language from the 1951 Manual for Courts-Martial to the 1969 Manual for Courts-Martial overruled *United States v. Nix.* The government's brief on this point confuses the standard for raising the defense of mental responsibility with the standard for granting a request for a sanity board. For this reason many of the cases cited by the government are irrelevant (*e.g.,* *United States v. Carey,* 29 C.M.R. 259 (C.M.A.1960); *United States v. Cleveland,* 39 C.M.R. 339 (A.B.R.1968); *United States v. Schlomann,* 36 C.M.R.

---

**3.** Former section 4244 of Title 18 was replaced by present section 4241 as part of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, § 403, 98 Stat. 2057–2059 (1984), which was approved 12 October 1984. Former section 4244 provided procedures for determining the mental competence of defendants in the United States District Courts during the period between arrest and imposition of sentence or expiration of parole. The statute provided that whenever a United States attorney had "reasonable cause" to believe that an accused "may be presently insane or otherwise ... mentally incompetent," he was to file a motion for a judicial determination of competence. The statute went on to provide that, "[u]pon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused ... to be examined as to his mental condition by at least one qualified psychiatrist...." The statute then made further provisions for the court's competence determination after completion of the psychiatric examination.

622 (A.B.R.1966)) and the logic in the government's brief is flawed.[4]

■ Contrary to the contention of the government, we hold that the change in language from the 1951 Manual for Courts-Martial to the 1969 Manual for Courts-Martial was not intended to reject the standard announced in *United States v. Nix* and had no such legal effect. *See* Analysis of Content, Manual for Courts-Martial, United States, 1969 (Revised edition), which contains no reference to *Nix* or to an intent to change the *Nix* standard.[5] Instead, the change from "substantial" to "reasonable" and from "basis for the belief [that the accused is or was insane]" to "basis for [a sanity board] inquiry" brings the language of the 1969 Manual for Courts-Martial into

closer conformity to the standard announced in *Nix.*

■ It is obvious that the trial defense counsel's request for a sanity board in this case was made in good faith and was not frivolous. Therefore, it was error for the trial judge to deny the request.[6]

## II

■ With respect to the question whether appellant's subsequent guilty plea waived her earlier request for a sanity board, we have examined a number of precedents, including the *Nix* case discussed above; *United States v. Dobson,* 36 C.M.R. 392 (C.M.A.1966); *United States v. Rehorn,* 26 C.M.R. 267 (C.M.A.1958); *Unit-*

4. Three cases do merit further comment. They are *United States v. Grembowicz,* 17 M.J. 720 (N.M.C.M.R.1983), *pet. denied,* 18 M.J. 101 (C.M.A.1984); *United States v. Thomas,* 8 M.J. 661 (A.C.M.R.1979), *pet. denied,* 9 M.J. 13 (C.M.A.1980); and *United States v. McMahon,* 4 M.J. 648 (A.F.C.M.R.1977).

The issue in *United States v. Grembowicz* appears to have been whether the trial judge was required to order a sanity inquiry *sua sponte,* rather than whether the trial judge erred by denying a request made by the trial defense counsel. Even if the latter was the issue addressed in the case, the Court based its conclusion that no error had occurred solely on paragraph 122*a,* Manual for Courts-Martial, 1969 (Revised edition), and *United States v. Nix* played no part in the Court's analysis. Paragraph 122*a* is identical in both the 1951 and 1969 Manuals for Courts-Martial. Since paragraph 122*a* was in existence at the time *United States v. Nix* was decided, it could not later be relied on for a proposition contrary to *United States v. Nix.*

*United States v. Thomas* is rather straightforwardly contrary to *United States v. Nix,* even to the point of citing *United States v. Nix* for the proposition that the standard for an inquiry into an accused's mental status is whether the proponent has produced a "substantial basis" for his request rather than merely a nonfrivolous, good-faith request. *United States v. Thomas,* 8 M.J. at 663. Since we construe *United States v. Nix* to hold the opposite, we must decline to rely on *United States v. Thomas.*

*United States v. McMahon* is similar to *United States v. Grembowicz* in that it ignores *United States v. Nix* and relies on paragraph 122*a* of the Manual for Courts-Martial for a proposition contrary to the holding in *United States v. Nix.* For these reasons, we also find *United States v. McMahon* unpersuasive.

5. The Manual for Courts-Martial, United States, 1984, in Rule 706 (the counterpart of paragraph 121), makes no reference to a standard for the decision-maker, containing neither the "substantial basis" nor the "reasonable basis" language found in previous Manuals for Courts-Martial. Our examination of the Analysis of the 1984 Manual for Courts-Martial leads us to conclude that, once again, no change in the *United States v. Nix* standard was intended or accomplished. In the Analysis, the drafters state that Rule 706 "is generally consistent with 18 U.S.C. § 4244." As noted above, former section 4244 of Title 18, was the model used by the United States Court of Military Appeals in *United States v. Nix.* (Since the Manual for Courts-Martial, 1984, was promulgated by the President on 13 April 1984 and former section 4244 was not replaced until 12 October 1984, it is evident that the drafter's comment refers to former section 4244.)

6. We have considered whether the observations of the psychiatric social worker mentioned above were an adequate substitute for a sanity board. This, of course, presents the question whether a mental status evaluation obtained by means other than a sanity board ordered under paragraph 121 of the Manual for Courts-Martial can legally serve as the equivalent of such an evaluation. Supposing (without deciding) that it can, we find here an inadequate showing of equivalency. The psychiatric social worker who saw appellant was not a psychiatrist, as paragraph 121 contemplates, nor was he shown to have similar expertise in the detection or evaluation of mental diseases and defects. Moreover, there was no showing that the psychiatric social worker who saw appellant attempted to perform a forensic mental evaluation of the sort contemplated by paragraph 121.

*ed States v. Mickel,* 26 C.M.R. 104 (C.M.A. 1958); and *United States v. Sloan,* 47 C.M.R. 436 (A.C.M.R.1973). Suffice it to say that we have found no case which clearly resolves the issue. Viewing the matter pragmatically, we believe that no useful purpose would be served by a waiver rule based on a guilty plea and decline to apply waiver based on appellant's plea of guilty in this case.

### III

■ This brings us to the effect of appellant's factual assertions during the inquiry into the providence of her guilty plea and to the providence of the plea itself. Since these issues are factually interrelated, we will address them together.

Appellant argues that her plea must be found improvident on the ground that once she asserted her insanity she became incompetent to withdraw that assertion. This argument is based on the false premise that only mentally disturbed people say that they are mentally disturbed. In fact, history and the casebooks are replete with instances in which persons accused of crime have falsely claimed insanity for a variety of reasons, including avoiding punishment.

The government argues that appellant's plea was provident because the last assertion she made at trial, in chronological order, was that she was sane. It is true that most inconsistencies which preclude acceptance of a guilty plea (unless resolved by further inquiry) come about in cases where an accused first asserts his guilt, then later makes a contradictory assertion. It is not true that the chronological order of the assertions necessarily determines whether further inquiry is required before a plea of guilty may be accepted. The object of the *Care*[7] procedure is to establish through

the medium of the accused's assertions that the accused is in fact guilty as a prerequisite to acceptance of a plea of guilty. If this cannot be done, the plea of guilty must be rejected.[8] Thus it is the existence of an unresolved contradiction of an accused's assertion of guilt which precludes acceptance of a guilty plea, rather than the order in which the assertions are made.

Wherever there is an apparent contradiction, however, the question arises whether the subsequent statements only contradict those made previously, or in addition repudiate them. In the case at bar we find that appellant not only asserted her sanity during the providence inquiry, but in the process of doing so also repudiated her earlier assertions which had suggested a lack of mental responsibility. Thus no assertion consistent with a request for a sanity board or inconsistent with a plea of guilty remained before the court.

Based on the above findings as to what transpired during appellant's trial, we hold that appellant's assertions during the providence inquiry implicitly but affirmatively withdrew her earlier request for a sanity board and that her plea of guilty was providently entered. The remaining assignment of error is without merit.

The findings of guilty and the sentence are affirmed.

Judge FELDER and Judge NAUGHTON concur.

---

7.  *United States v. Care,* 40 C.M.R. 247 (C.M.A. 1969).

8.  *United States v. Moglia,* 3 M.J. 216 (C.M.A. 1977); *United States v. Johnson,* 1 M.J. 36 (C.M.

A.1975). The accused's own belief in his guilt must also be established, of course. *United States v. Zieran,* 15 M.J. 511 (A.C.M.R.1982), *pet. denied,* 16 M.J. 125 (C.M.A.1983).