**UNITED STATES, Appellee,**

**v.**

**Specialist Five Steven T. JANCAREK,
110–54–0507, United States
Army, Appellant.**

**CM 447462.**

U.S. Army Court of Military Review.

13 May 1986.

For Appellant: Lieutenant Colonel Arthur L. Hunt, JAGC, Major Marion E. Winter, JAGC, Captain Pamela O. Barron, JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Major Byron J. Braun, JAGC, Captain Jan M. Wamsted, JAGC (on brief).

Before WOLD, FELDER, and NAUGHTON, Appellate Military Judges.

### OPINION OF THE COURT

WOLD, Senior Judge:

Appellant's trial defense counsel requested the trial judge to order a sanity board pursuant to Rule for Courts-Martial [R.C.M.] 706 to inquire into appellant's mental capacity to stand trial. In support of his request, the trial defense counsel offered to prove (1) that appellant had, approximately one month earlier, been admitted to the local military hospital as a result of an "alleged suicidal gesture," and (2) that he was unable to communicate effectively and completely with appellant. The government rejoined that a sanity board was unnecessary since appellant had already been evaluated by a psychiatrist who had determined that appellant had the mental capacity to stand trial. The trial judge heard the testimony of the government's psychiatrist, found that appellant had the mental capacity to stand trial, and proceeded with the trial without having appellant examined by a sanity board. We specified the following issue:

> DID THE MILITARY JUDGE ERR IN DENYING APPELLANT'S REQUEST AT TRIAL FOR A SANITY BOARD WHEN IT WAS APPARENT THAT APPELLANT HAD BEEN PREVIOUSLY EXAMINED BY A PSYCHIATRIST AND FOUND BY THAT PSYCHIATRIST TO BE MENTALLY COMPETENT, BUT WHERE THIS EXAMINATION WAS NOT PART OF A SANITY

BOARD OR OTHERWISE CONDUCTED PURSUANT TO THE PROVISIONS OF MANUAL FOR COURTS–MARTIAL, UNITED STATES, 1984, RULE FOR COURTS–MARTIAL 706? *SEE UNITED STATES V. NIX*, 36 CMR 76 (C.M.A.1965); *UNITED STATES V. KISH*, 20 M.J. 652, 655 n. 6 (A.C.M.R. 1985).

The pertinent portions of R.C.M. 706 are as follows:

Rule 706. Inquiry into the mental capacity or mental responsibility of the accused

(a) *Initial action.* If it appears to any commander who considers the disposition of charges, or to any investigating officer, trial counsel, defense counsel, military judge, or member that there is reason to believe that the accused lacked mental responsibility for any offense charged or lacks capacity to stand trial, that fact and the basis of the belief or observation shall be transmitted through appropriate channels to the officer authorized to order an inquiry into the mental condition of the accused. The submission may be accompanied by an application for a mental examination under this rule.

(b) *Ordering an inquiry.*

. . . .

(2) *After referral.* After referral of charges, an inquiry into the mental capacity or mental responsibility of the accused may be ordered by the military judge. . . .

(c) *Inquiry.*

(1) *By whom conducted.* When a mental examination is ordered under subsection (b) of this rule, the matter shall be referred to a board of one or more physicians for their observation and report as to the mental capacity or mental responsibility, or both, of the accused. Ordinarily, at least one member of the board shall be a psychiatrist.

(2) *Matters in inquiry.* When a mental examination is ordered under this rule, the order shall contain the reasons for doubting the mental capacity or mental responsibility, or both, of the accused, or other reasons for requesting the examination. In addition to other requirements, the order shall require the board to make separate and distinct findings as to each of the following questions:

. . . .

(B) What is the clinical psychiatric diagnosis?

. . . .

(E) Does the accused have sufficient mental capacity to understand the nature of the proceedings and to conduct or cooperate intelligently in his defense?

In *United States v. Nix*, 36 CMR 76, 79 (C.M.A.1965), the United States Court of Military Appeals held that under paragraph 121, Manual for Courts-Martial, United States, 1951, which was the predecessor provision to R.C.M. 706, a request for a sanity board was to be granted "if [the motion] is not frivolous and is made in good faith." The Court's rationale was:

When the claim of insanity is not frivolous, to allow the court to determine that there is no cause to believe that an accused may be insane or otherwise mentally incompetent would be inconsistent with the legislative purpose to provide for the detection of mental disorders "not ... readily apparent to the eye of the layman."

*Id.* at 81 (footnote omitted) (quoting *Wear v. United States*, 218 F.2d 24, 26 (D.C.Cir. 1954)).

In *United States v. Kish*, 20 M.J. 652 (ACMR 1985), we reviewed the development of military law in this area and concluded that the *Nix* approach had remained unaltered by subsequent case law or by the 1969 revision of the Manual for Courts-Martial.[1] We also addressed, albeit in dic-

1. Contrary to what we said in *Kish*, 20 M.J. at 655, the Dept. of Army, Pamphlet No. 27–2, Analysis of Contents, Manual for Courts-Martial, United States, 1969 (Revised edition), Ch. 24 (July 1970), does indeed refer to *Nix*. The relevant passage, which refers to paragraph 121, is as follows: *"Inquiry before trial.* In the second sentence of the first paragraph, 'a reason-

ta, the impact of the 1984 revision of the Manual for Courts-Martial on *Nix:*

> Our examination of the Analysis of the 1984 Manual for Courts-Martial leads us to conclude that, once again, no change in the *United States v. Nix* standard was intended or accomplished. In the Analysis, the drafters state that [R.C.M.] 706 "is generally consistent with 18 U.S.C. § 4244." As noted above, former section 4244 of Title 18 was the model used by the United States Court of Military Appeals in *United States v. Nix.*

*Id.* at 655 n. 5. Our consideration of this question in the context of the case at bar has revealed no reason to alter the conclusion that the *Nix* standard applies to R.C.M. 706.

In *Kish* we also gave preliminary consideration to the specific issue presented by the case at bar:

> We have considered whether the observations of [a] psychiatric social worker [who examined Private Kish] were an adequate substitute for a sanity board. This, of course, presents the question whether a mental status evaluation obtained by means other than a sanity board ordered under paragraph 121 of the Manual for Courts-Martial can legally serve as the equivalent of such an evaluation. Supposing (without deciding) that it can, we find here an inadequate showing of equivalency. The psychiatric social worker who saw [Private Kish] was not a psychiatrist, as paragraph 121 contemplates, nor was he shown to have

similar expertise in the detection or evaluation of mental diseases and defects. Moreover, there was no showing that the psychiatric social worker who saw appellant attempted to perform a forensic mental evaluation of the sort contemplated by paragraph 121.

*Id.* at 655 n. 6.

In the case at bar, it is clear that the trial judge did not apply the "non-frivolous, good faith" standard mandated in *Nix.* Instead, it appears that he addressed the question whether the mental evaluation which had already been performed on appellant was the equivalent of a sanity board. The record is somewhat confusing on this point because it contains no reference to *Nix*, to *Kish*, to the question whether there can legally be a substitute for a sanity board, or to the standard to be applied in determining equivalency. Moreover, the trial judge did not explicitly rule on the request for a sanity board. After hearing the testimony of the examining psychiatrist and the arguments of counsel, the judge moved directly to a determination that appellant had sufficient mental capacity to stand trial under R.C.M. 909, entering findings that "the presumption of [appellant's] capacity to stand trial has not been shown to the contrary by the defense" and that, by a preponderance of the evidence, "[appellant] possessed sufficient mental capacity to understand the nature of the proceedings against him and to conduct or cooperate intelligently in the defense of his case." [2] On the other hand, the trial judge

---

able' was substituted for 'substantial' before the word 'basis.' *See* United States v. Nix, 15 USCMA 578, 582–583, 36 CMR 76, 80–81 (1965)." The Manual's citation of *Nix* confirms the conclusion we reached in *Kish, i.e.,* that the change was intended to bring the Manual into closer conformity with *Nix* rather than to reject the *Nix* standard.

2.  In pertinent part, R.C.M. 909 provides:
    Rule 909. Capacity of the accused to stand trial by court-martial.
    (a) *In general.* No person may be brought to trial by court-martial unless that person possesses sufficient mental capacity to understand the nature of the proceedings against that person and to conduct or cooperate intelligently in the defense of the case.

(b) *Presumption of capacity.* A person is presumed to have the capacity to stand trial unless the contrary appears.
(c) *Determination at trial.*
   (1) *Nature of issue.* The mental capacity of the accused is an interlocutory question of fact.
   (2) *Standard.* When the issue of the accused's capacity to stand trial is raised, trial may not proceed unless it is establised by a preponderance of the evidence that the accused possesses sufficient mental capacity to understand the nature of the proceedings against the accused and to conduct or cooperate intelligently in the defense of the case.

at one point did say, "[W]e're going to ... see if [the psychiatrist] has examined this individual to be able to give a proper determination [of his capacity]. That's what I'm going to find out this afternoon."

■ Whatever inquiry the trial judge actually pursued, his implicit denial of the defense request for a sanity board turns out, under the circumstances of this case, to have been legally correct, and that is what counts. Except in those situations requiring the exercise of "sound discretion," our decision whether to sustain or reverse a trial judge's ruling should be based on the legal correctness of the ruling itself and not on the reasons which may have caused the trial judge to rule as he did. *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 157, 82 L.Ed. 224 (1937); *see also* 5 Am.Jur.2d § 785 and cases cited therein.[3]

■ We conclude that the trial judge's ruling was legally correct because we are convinced that in a proper case there can be a substitute for a sanity board and that this is such a case.

The purpose of R.C.M. 706, like its predecessors, is "to provide for the detection of mental disorders 'not ... readily apparent to the eye of the layman.'" *United States v. Nix,* 36 CMR at 81.[4] Obviously, the drafters of the current and prior Manuals for Courts-Martial designated the sanity board as the mechanism for forensic mental evaluations with that purpose in mind. However, it is equally obvious, we believe, that the sanity board was selected for other reasons as well. For example, the aura of formality surrounding a board proceeding and the customary written report undoubtedly appealed to the drafters. In addition, the sanity board format facilitates the important task of limiting access to privileged information. These are merely illustrations. The point is that we do not believe that the drafters selected the sanity board format because they had determined that no other procedure was capable of detecting mental disorders or determining an accused person's mental capacity or responsibility. That being the case, we believe we should look to the substance of the evaluation performed on the accused rather than its form.

As we pointed out in *Kish,* the primary distinguishing characteristics of a sanity board are the participation of a psychiatrist or someone with "similar expertise in the detection or evaluation of mental diseases or defects"[5] and the administration of a "forensic mental evaluation."[6] 20 M.J. at

---

**3.** Certain decisions at trial are necessarily submitted to the sound discretion of the trial judge, and they will not be reversed on appeal even though we might have reached a different result on the same facts. In such cases, our focus is not on whether there was a "right ruling," but rather on whether the trial judge applied the proper legal standard in formulating his ruling. Where it is apparent that a trial judge applied an incorrect legal standard in making such a discretionary decision, we will likely find error even where it is possible that an application of the proper legal standard might have yielded the same result. *See Mannino v. Intern Mfg. Co.,* 650 F.2d 846, 849 (6th Cir.1981) ("while it is not the province of appellate courts to review the discretion of trial court if exercised within legal bounds, it is the duty and right of appellate court, to determine whether, in the exercise of the discretion committed to it, the trial judge applied correct legal standards"); *United States v. Barker,* 553 F.2d 1013, 1024 (6th Cir.1977) ("if the [trial] court applies the incorrect legal standard when it makes [a discretionary] determination, its judgment will be reversed"); *Riley v.*

*Layton,* 329 F.2d 53, 56–57 (10th Cir.1964) ("Our function is to determine whether, in the exercise of his discretion, the trial judge applied the correct legal standards").

**4.** The fact that the case at bar involves a request for evaluation of appellant's mental capacity to stand trial, rather than for evaluation of mental responsibility as in *Nix* and *Kish,* dictates no difference in the applicable legal principles. As the Court noted in *Nix,* the basic idea is to have professionals, rather than laymen, determine whether an accused is "insane *or otherwise mentally incompetent*". 36 CMR at 81 (emphasis added).

**5.** R.C.M. 706(c)(1) provides that a sanity board may consist of one or more physicians, one of whom will ordinarily be a psychiatrist.

**6.** R.C.M. 706(c)(2)(B) provides that a sanity board is required to make a clinical psychiatric diagnosis and R.C.M. 706(c)(2)(E) provides that a sanity board is required to state whether the accused has sufficient mental capacity to under-

655 n. 6. In this case, both of these elements are present.

■ Appellant was examined by a physician who had completed her psychiatric residency training and was assigned as the chief of the community mental health service at the local military hospital. She had previously served on several sanity boards. Before us, appellant challenges this physician's qualifications as a psychiatrist. No such challenge was raised at trial and the witness testified that she was qualified by training and experience. The trial judge implicitly agreed and we concur.

The examining psychiatrist testified extensively as to appellant's mental capacity to stand trial. She provided the court with a specific diagnosis (a personality disorder with patterns of substance abuse and maladaptive responses to stress, which did not constitute a mental disease or defect), and specifically commented on appellant's capacity to understand the nature of the proceedings and to conduct or cooperate intelligently in his defense.

In addition to the above requirements, R.C.M. 706(c) provides that a sanity board is to be informed of the reasons for doubting the mental capacity or mental responsibility of the accused. In this case, the examining psychiatrist was aware of appellant's alleged suicidal gesture, but was unaware of the trial defense counsel's difficulties in communicating with him. Appellant's capacity to communicate coherently was, however, one of the areas which the examining psychiatrist specifically evaluated and found unimpaired.

There are other important factors in this case upon which we base our finding of equivalency. First, the examining psychiatrist discovered that appellant had been scheduled to appear in court as a defendant the day after the "alleged suicidal gesture" for which he was hospitalized. This focused her attention on the question of appellant's capacity to stand trial. Second, the psychiatrist was thoroughly examined and cross-examined about the evaluation she had performed on appellant and about her conclusions. Third, the psychiatrist specifically addressed the question whether a sanity board would serve any purpose which had not already been accomplished by her examination of appellant, stated unequivocally that in her professional judgment it would not, and explained her reasons in convincing detail.[7]

Appellant also claims that the court-martial lacked subject-matter jurisdiction over the offenses. We disagree.

The findings of guilty and the sentence are affirmed.

Judge FELDER and Judge NAUGHTON concur.

---

stand the nature of the proceedings and to conduct or cooperate intelligently in his defense. (R.C.M. 706(c)(2)(A), (C), and (D) cover questions relating to mental responsibility.)

7. The examining psychiatrist first became involved with the question whether a sanity board should examine appellant when she was informed that the convening authority had granted a defense request for a sanity board. Believing that a sanity board would be redundant, she sent a recommendation to the convening authority that the board be cancelled, stating her reasons. The convening authority then reviewed and reversed his decision. This should not be confused with the situation condemned in *Nix,* where a base medical services director took it upon himself to effectively countermand a convening authority's order for a sanity board. 36 CMR at 77–80.