**UNITED STATES, Appellee**

v.

**Sergeant Aurora C. COLLINS, 109–42–3967, United States Army, Appellant.**

**ARMY 9301285.**

U.S. Army Court of Criminal Appeals.

13 Dec. 1994.

---

proved the adjudged sentence of a bad-conduct discharge, confinement for thirty months, forfeiture of $650.00 pay per month for thirty months, and reduction to Private E1.

█ This case is before the court for automatic review pursuant to Article 66, UCMJ, 10 U.S.C.A. § 866. We have examined the record of trial, the assignments of error, the assertions of error raised personally by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and the government's reply. The only issue of merit is whether the appellant had the requisite mental capacity to stand trial in accordance with Rule for Courts–Martial 909 [hereinafter R.C.M.]. We have concluded that the military judge abused his discretion when he invoked the presumption of sanity based on a "mental status evaluation" in lieu of a sanity board pursuant to R.C.M. 706 without establishing that the "evaluation" was an acceptable substitute. Therefore, we are required to order an evidentiary hearing to resolve the issue of the appellant's capacity to stand trial.

For Appellant: Captain Thomas D. Wight, JAGC, Captain Robert H. Pope, JAGC (on brief).

For Appellee: Colonel John M. Smith, JAGC, Lieutenant Colonel James L. Pohl, JAGC, Major Lyle D. Jentzer, JAGC, Captain James P. Baiamonte, JAGC, USAR (on brief).

Before LANE, CAIRNS, and RUSSELL, Appellate Military Judges.

## OPINION OF THE COURT

RUSSELL, Judge:

Contrary to her pleas, the appellant was convicted by a general court-martial composed of officer members of making a false official statement and three specifications of wrongful use of drugs in violation of Articles 107 and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 907 and 912a (1988) [hereinafter UCMJ]. The convening authority ap-

## I.

Original charges in this case were referred on 27 April 1993. The appellant was arraigned on 11 May 1993, but the trial was delayed until 12 July 1993. On 21 June, the defense attorney requested that a sanity board be appointed pursuant to R.C.M. 706 to determine whether the appellant was capable of assisting in her own defense. Counsel cited as the basis for the request his observation that the appellant had shown "signs of hysteria" and that the situational stress was beginning to affect her judgment, pointing out that "she has been inconsistent in communicating with both her [counsel], seeming to be unable to deal with the situation she is facing." Defense counsel concluded that they had "grave doubts about SGT Collins' ability to assist them in defense of her case."

The defense request for a sanity board was delivered to the trial counsel on 21 June 1993. On 28 June, at the request of the command, the appellant underwent a mental status evaluation. On 8 July, a Medical Corps colonel identified as "Chief CMHS"

signed a one page report on DA Form 3822–R (Report of Mental Status Evaluation). The trial counsel asserted that this officer was a psychiatrist and the person who conducted the examination. On 12 July, the defense renewed their request for a sanity board, this time directed to the military judge.[1] The defense expressed dissatisfaction with the "very cursory" nature of the mental status evaluation. They feared that it was not sufficient to determine whether someone is competent to conduct or cooperate intelligently in his own defense in a criminal proceeding. In further support of their continuing objection to the lack of a sanity board, the defense provided lay testimony that the appellant had gone through an episode of hysteria the night before, including suicidal statements that had been repeated that morning. The defense felt there existed "very strong indications that right now she's not capable of making the decisions that she needs to make today."

At the conclusion of the defense presentation, the military judge conceded that "the mental status evaluation is not a substitute or does not have the depth for a sanity board under R.C.M. 706." Notwithstanding this apparent finding of lack of equivalency, the military judge inexplicably moved directly to decide the R.C.M. 909 issue of whether or not the appellant possessed sufficient mental capacity to stand trial.[2] He stated:

"Nonetheless, the accused is presumed to be sane and to have mental ... capacity to understand and participate in the proceedings at this trial. That's the presumption, and the mental status evaluation tendered to me by the government, which includes a psychiatric examination [conducted] only about two weeks ago, doesn't give me any basis to question that presumption."

In denying the request for a sanity board, the judge concluded, "I specifically find for the record that there's been no showing to overcome the presumption of mental capacity in this case."

## II.

■ When a defense counsel requests a sanity board based on a non-frivolous, good-faith claim that an accused lacks the mental capacity to stand trial, the military judge cannot rule finally on that issue pursuant to R.C.M. 909 without first considering the report of a sanity board conducted in accordance with R.C.M. 706 or an equivalent forensic mental evaluation.[3] *United States v. Jancarek*, 22 M.J. 600 (A.C.M.R.1986), *pet. denied*, 24 M.J. 42 (C.M.A.1987) (citing *United States v. Nix*, 15 U.S.C.M.A. 578, 36 C.M.R. 76 (1965)); *United States v. Kish*, 20 M.J. 652 (A.C.M.R.1985) (also citing *Nix*).

## III.

Inasmuch as the appellant's request for a sanity board was not frivolous and made in good faith, a sanity board or its equivalent was warranted before the judge could rule on the mental capacity of the appellant. Thus, the narrow issue is whether the mental status evaluation relied on by the military judge was a forensic mental evaluation of the sort

---

1. This post-arraignment request for a sanity board was not previously transmitted to the military judge for decision. Though the record is sketchy, it appears that the trial counsel decided to conduct a command requested mental status evaluation in lieu of complying with the request for a sanity board.

2. Rule for Courts–Martial 909, Capacity of the accused to stand trial by court-martial, provides:

    (a) *In general.* No person may be brought to trial by court-martial if that person is presently suffering from a mental disease or defect rendering him or her mentally incompetent to the extent that he or she is unable to understand the nature of the proceedings against that person or to conduct or cooperate intelligently in the defense of the case.

    (b) *Presumption of capacity.* A person is presumed to have the capacity to stand trial unless the contrary is established.
    (c) *Determination at trial.*
       (1) *Nature of issue.* The mental capacity of the accused is an interlocutory question of fact.
       (2) *Standard.* Trial may proceed unless it is established by a preponderance of the evidence that the accused is presently suffering from a mental disease or defect rendering him or her mentally incompetent to the extent that he or she is unable to understand the nature of the proceedings against the accused or to conduct or cooperate intelligently in the defense of the case.

3. While this point is clear from a reading of the case law, R.C.M. 909 should be revised to clearly show its relationship to R.C.M. 706.

contemplated by R.C.M. 706. Looking to the record in resolving this issue, we give great weight to the military judge's conclusion that "[t]he mental status evaluation is not a substitute or does not have the depth for a sanity board under R.C.M. 706."

Unfortunately, there is little else in the record to assist us. We have only the trial counsel's assertion that the examiner was a psychiatrist, and the examiner's one-page report to assist us. The report is a "check the block" form with a brief summation that on its face simply evaluates whether the appellant possessed sufficient mental capacity to participate in administrative discharge proceedings under Army Reg. 635–200, Enlisted Personnel (17 Oct. 1990). However, inasmuch as the appellant stood in peril of a severe criminal sanction, she was entitled by law to the benefit of a more thorough mental status evaluation than that generally provided for in administrative proceedings. *See Jancarek;* R.C.M. 706.

The court in *Jancarek* considered an abundance of evidence in the record in reaching its conclusion that a mental status evaluation was equivalent to an R.C.M. 706 inquiry. For example, in *Jancarek* there was: specific psychiatric testimony concerning the appellant's capacity to understand the nature of criminal proceedings and to cooperate in her defense at a court-martial; a description of the examiner's familiarity with forensic evaluation or participation in previous sanity boards; other evidence that the examiner attempted to perform an in-depth forensic evaluation of the sort contemplated by R.C.M. 706; and indication that the examiner was informed of the reasons for doubting the mental capacity of the accused as called for by R.C.M. 706(c). Evidence of such nature is missing in appellant's case.

Accordingly, inasmuch as there is no expert evidence that the appellant's mental status was specifically evaluated with a view toward court-martial, we, like the trial judge, are not satisfied that the questioned evaluation was equivalent to a sanity board under R.C.M. 706.[4]

The ambiguity in the sufficiency of the mental status evaluation relied on by the military judge causes us to conclude that a *Dubay*[5] evidentiary hearing is necessary. *See United States v. Roberts,* 18 M.J. 192 (C.M.A.1984). Accordingly, action on the approved findings of guilty and the sentence is held in abeyance pending completion of an evidentiary hearing, as described below.

The record of trial is returned to The Judge Advocate General for an evidentiary hearing before a military judge appointed by an appropriate convening authority. The military judge will order a sanity board under R.C.M. 706 to determine the appellant's present mental capacity and her mental capacity at the time of trial. After consideration of the full report of the sanity board, the military judge will hear the contentions of the parties, and enter findings of fact and conclusions of law.

If the military judge finds that the appellant possessed the appropriate mental capacity at the time of trial, then the convening authority will return the record to this court for further review. However, if the military judge finds that the appellant lacked mental capacity at the time of trial but *now* possesses the appropriate mental capacity, the convening authority may order a rehearing.

If the military judge finds that the appellant lacked mental capacity at the time of trial and continues under the impediment, the convening authority may: (1) suspend the proceedings, (2) disapprove the findings

---

4. We note that the examiner's report reflects an observation that the appellant, though anxious and labile in mood, was fully alert and oriented, with clear thinking process, normal thought content and good memory, free of any suicidal intentions and with the mental capacity to understand and participate "in the proceedings." However, the examiner's ultimate conclusion based on his evaluation suggests that the review was cursory.

He concludes with a limited finding, consistent with the apparent limited purpose of the form only that the appellant is "cleared for any administrative action deemed appropriate by the command."

5. *United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

and sentence and dismiss the charges and specifications, or (3) take any administrative action deemed appropriate; and return the record to this court for further review. *See* R.C.M. 909(c)(2) discussion.

If the convening authority determines that it is impracticable to hold the evidentiary hearing or, if it arises, a rehearing on the charges and specifications, the record will be returned to this court with an explanation for that determination.

Senior Judge LANE * and Judge CAIRNS concur.

---

* Senior Judge Jack F. Lane, Jr., took final action in this case prior to his retirement.