UNITED STATES, Appellee,

v.

Specialist Heather A. PATTIN, United States Army, Appellant.

ARMY 9701188.

U.S. Army Court of Criminal Appeals.

2 April 1999.

For Appellant: Colonel John T. Phelps II, JA; Lieutenant Colonel Michael L. Walters, JA; Major Leslie A. Nepper, JA; Captain Paul J. Perrone, Jr., JA (on brief).

For Appellee: Lieutenant Colonel Frederic L. Borch III, JA; Captain Chris A. Wendelbo, JA; Captain Robert F. Resnick, JA (on brief).

Before JOHNSTON, Senior Judge, SQUIRES, and ECKER, Appellate Military Judges.

## OPINION OF THE COURT

SQUIRES, Judge:

Specialist (SPC) Heather Pattin was convicted, pursuant to her pleas, of various drug related offenses in violation in Articles 81 and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 912 [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a bad-conduct discharge, four months of confinement, forfeiture of $500.00 per month for four months and reduction to Private E1. In a single assignment of error, appellant contends that the military judge erred by not ordering a sanity board after the trial defense counsel made a good faith, non-frivolous claim that SPC Pattin lacked the capacity to stand trial. We have reviewed the military judge's application of the law de novo, and finding no error, affirm.

### FACTS

The offenses for which appellant was convicted transpired at or near Fort Hood, Texas, between 1 December 1996 and 17 January 1997. At the time of her illegal activities, SPC Pattin was 19 years of age, was recovering from a divorce, and had a high school friend who had recently committed suicide.

On 17 January 1997, SPC Pattin moved to Germany pursuant to permanent change of station orders. The following month, she was interviewed by an agent of the Criminal Investigation Command (CID) and admitted her misconduct. She remained in Germany where, according to leaders in her support battalion, she was a superb, model soldier. There is no evidence that appellant exhibited any mental or emotional problems while in Germany. To the contrary, SPC Pattin's supervisors were complimentary of her mental and physical stamina.

In June 1997, appellant was returned to Fort Hood, Texas. Charges were preferred on 18 June and referred to a Special Court–Martial empowered to adjudge a bad-conduct discharge on 23 June.

On 15 July, Captain (CPT) C, SPC Pattin's trial defense counsel, asked the military judge to order a sanity board for his client.[1] As justification, counsel noted that on 24 June, at his first interview with SPC Pattin, she cried, had poor memory, confused thinking, depression, and suicidal ideation. When he met with appellant on 26 June, she was still depressed, unable to concentrate, and given to bouts of crying. On 15 July, the day defense counsel filed his motion, appellant cried again.

Trial counsel opposed the motion for a sanity board. At an Article 39(a), UCMJ, session held on 18 July, the military judge found, based on the facts set forth in the defense's motion, that defense counsel had not rebutted the presumption of competence to stand trial. While recognizing the threshold to get a sanity evaluation under *United States v. Nix*, 15 U.S.C.M.A. 578, 582–83, 36 C.M.R. 76, 80–81, 1965 WL 4788 (1965) (citing *Wear v. United States*, 218 F.2d 24, 26 (D.C.Cir.1954)) and *United States v. Kish*, 20 M.J. 652, 655 (A.C.M.R.1985), was indeed low, the military judge found the facts presented did not get appellant over that threshold. Nonetheless, and presumably as a precaution, the military judge ordered SPC Pattin be taken to "mental health professionals" at Fort Hood for a "mental status evaluation" and any necessary treatment or care.

Trial defense counsel then moved to delay the scheduled 29 July trial because his client's unit was in Germany. Since he had not spoken with prospective witnesses in that country, he was unprepared for trial. Captain C then noted that his client's emotional problems warranted a continuance. The trial judge refused defense counsel's delay request, but admonished counsel that if he received additional information on his client's sanity, to put it in writing and deliver it to the court.

Specialist Pattin was seen by mental health personnel, to include a clinical psychologist, CPT Lang, shortly thereafter. Captain Lang found no malady or incapacity

---

1. This matter was raised in a written motion (Appellate Exhibit II) questioning appellant's sanity both with respect to her mental responsibility at the time of the charged offenses as well as her capacity to stand trial.

that would preclude or delay SPC Pattin's scheduled court-martial.

Undaunted, CPT C filed an amended motion for a sanity board on 21 July. Included in this motion was material that had been omitted from his initial request. In particular, CPT C stated that because of the emotional problems SPC Pattin evidenced on 24 June, "I could not start working on her defense." To his description of the 26 June meeting, CPT C added that SPC Pattin forgot unspecified documents and he "couldn't get needed information."

Captain C next informed the court for the first time that he had met with SPC Pattin on 3 July. At this meeting she was sad, dejected, cried, exhibited confused thinking and poor memory, and got mad at CPT C. She again forgot to bring documents her defense counsel had requested. Captain C also informed the court that SPC Pattin had missed a meeting with him on 11 July, which hindered his case preparation. Finally, defense counsel argued that CPT Lang's evaluation, which included a period of therapeutic treatment, necessitated delaying the trial date.

At a second Article 39(a), UCMJ, session convened on 22 July, the court called CPT Lang as its witness. He opined that SPC Pattin was fully capable of participating in her trial, did not require a sanity board, and despite the fact that she was being treated for depression associated with her court-martial and divorce, it was better for the patient/accused if the trial were not delayed. Defense counsel's rejoinder to this expert opinion was that SPC Pattin had not been able to cooperate intelligently with him during the first month after the charges were preferred and he needed to delay the trial for a week. The military judge delayed the court-martial until 31 July.

On 28 July, the convening authority accepted SPC Pattin's pretrial agreement submission. Three days later, SPC Pattin pleaded guilty at her (re)scheduled court-martial. There was no further mention of a need for a sanity board.

## CURRENT LAW

Citing *United States v. Collins*, 41 M.J. 610 (Army Ct.Crim.App.1994) and *United States v. James*, 47 M.J. 641 (Army Ct.Crim. App.1997), appellate defense counsel contend that SPC Pattin was entitled to a sanity board, and the evaluation she received from CPT Lang was not the equivalent of such a board. We hold that the military judge committed no error in refusing to order a sanity board because trial defense counsel's proffer never crossed the threshold that would entitle his client to one. Accordingly, we never reach the issue of whether CPT Lang's evaluation constituted an adequate substitute for a sanity board. *See United States v. Jancarek*, 22 M.J. 600 (A.C.M.R.1986); *Collins*, 41 M.J. 610; *James*, 47 M.J. 641; Rules for Courts–Martial 706 [hereinafter R.C.M.].

■ "A person is presumed to have the capacity to stand trial unless the contrary is established." R.C.M. 909(b). Accordingly, there is no per se requirement that a convening authority or military judge order a sanity board absent a sufficient proffer that such a proceeding is necessary. *See United States v. English*, 47 M.J. 215, 217 (1997) (citing R.C.M. 706). Unless the defense counsel can show a basis for questioning the client's mental capacity, there is no need for the thorough mental examination contemplated by R.C.M. 706.

■ Our high court announced the standard for granting a request for a sanity board in *Nix*, 36 C.M.R. at 80–81. There the court stated "the motion should be granted if it is not frivolous and is made in good faith." *Id.* (citing *Wear*, 218 F.2d at 26); *English*, 47 M.J. at 221 (Crawford, J., dissenting); *see Jancarek*, 22 M.J. at 601; *Kish*, 20 M.J. at 654. However, the terms "good faith" and "frivolous," in this setting, have not been defined in military law.

## DISCUSSION

As aptly noted by the trial counsel in the case sub judice, a low threshold is nonetheless a threshold which the proponent must cross. Neither of the military judges who heard argument or evidence on appellant's motion for a sanity board ruled that it was

frivolous or made in bad faith. However, Judge Merck's recitation of the *Nix* standard in denying the motion presumes that he found it lacking in seriousness (good faith) or substance (frivolous.)

*Black's Law Dictionary* defines "good faith" as "an intangible and abstract quality with no technical meaning or statutory definition" but encompassing "an honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage" over another. *Id.* at 693 (6th ed.1990).

■■■ To be made in "good faith," a motion does not have to meet any particular measurement of merit. *Ellis v. United States,* 356 U.S. 674, 674–75, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958); *see also Crisafi v. Holland,* 655 F.2d 1305, 1306 (D.C.Cir.1981). Motions can be made in good faith even when accompanied by unreasonable legal arguments or the absence of legal precedent. *See, e.g., Lerch v. Boyer,* 929 F.Supp. 319, 324 (N.D.Ind.1996), *summ. judgment granted, United States v. Lerch,* No. 1:97 CV 0035 AS, 1998 WL 762346 (Sept. 10, 1998). The mere failure to articulate a justiciable basis for a particular claim or motion does not merit censure for a lack of good faith. Finally, a military judge's disbelief of the facial, factual allegations contained in the motion does not warrant denial for lack of good faith. *See generally Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), *superseded by statute as stated in Spivey v. Godinez,* No. 95 C 0297, 1997 WL 610056 (N.D.Ill. Sept. 24, 1997); *Brown v. Citicorp,* No. 97 C 6337, 1997 WL 665872 (N.D.Ill. Oct. 16, 1997); and *Murray v. Midwest Real Estate Investment Co.,* No. 98 C 1569, 1998 WL 164858 (N.D.Ill. Mar. 31, 1998).

■■■ "Frivolous" has a variety of definitions and applications. *See Ramos v. Thornburgh,* 732 F.Supp. 696, 702–703 (E.D.Tex. 1989); *see generally Neitzke,* 490 U.S. at 325, 109 S.Ct. 1827; *Lerch,* 929 F.Supp. 319. The term connotes something "[o]f little weight or importance." *Black's Law Dictionary,* 668, (6th ed.1990); *English,* 47 M.J. at 221 (Crawford, J., dissenting) (citing *United States v. Lesueur,* ACM 27181, slip op. at 1

(A.F.C.M.R. 13 June 1989) (unpub.)). A claim is frivolous when the proponent presents "no rational argument based upon the evidence or law in support" thereof or it "is interposed for mere purposes of delay." *Id.* One could characterize a frivolous motion as abusive, egregious, and utterly implausible. *See Lerch,* 929 F.Supp. at 324. A frivolous action is "some level beneath meritless," *Ramos,* 732 F.Supp. at 703, and bereft of any basis or arguable merit in law or fact. *See Neitzke,* 490 U.S. at 325, 109 S.Ct. 1827; *Amwest Mortgage Corp., Doss & Cavett v. Grady,* 925 F.2d 1162, 1164–65 (9th Cir.1991). Each of these concepts or applications suggests an evidentiary standard involving such a lack of credible evidence or inferences that the ultimate fact or asserted conclusion cannot be reliably determined.

■■■ Applying the above to appellant's case, we note that the circumstances strongly suggest that CPT C's request for a sanity board was a subterfuge for obtaining a delay in the trial in order to adequately defend his client. The bulk of his discussion on the motion, both as originally filed and later amended, focused on trial preparation and the need for more time, rather than addressing the factual basis for his claim about appellant's mental condition.

We need not make a finding regarding counsel's good faith. We are satisfied that CPT C's motion on behalf of appellant had no arguable basis in fact or law and was therefore frivolous. We reach this conclusion for several reasons. First, we note that there is absolutely no evidence suggesting or implying appellant lacked mental responsibility at the time of her crimes. Counsel's concerns focused on her uncooperativeness and his inability to prepare for trial. We find particularly noteworthy the absence of any allegation that appellant's alleged use of two drugs, one of which is psychoactive, had any bearing on her mental status.

Supporting this observation is the fact that appellant's performance after these allegations surfaced was rated outstanding. Her chain of command in Germany evaluated her as a superb, model soldier, exhibiting no mental or emotional problems. There is also

no suggestion of problems in dealing with CID agents when interviewed about these offenses. Rather, her "acting out" apparently started upon being returned to the United States. At this point it was undoubtedly obvious to her that she was going to have to face the consequences of her criminal behavior. We find her actions are more consistent with the stress of dealing with an unpleasant reality rather than evidencing mental capacity, or lack thereof, to stand trial.

Finally, the testimony of CPT Lang supports the conclusion that appellant was not mentally ill. While his conclusions are somewhat ambiguous, he found that appellant had a personality disorder, not a mental disease or defect.

Additionally, we note that appellant's performance during the providence inquiry revealed no problems on her behalf in understanding the nature of the proceedings, assisting in the process or raising matters questioning her mental responsibility either at the time of trial or at the time of the offenses. Based on the foregoing, we conclude that CPT C's motion for a sanity board was merely a frivolous attempt to bootstrap a trial delay through the mechanism of a sanity board. Thus, no basis exists to conclude that the military judge erred in denying that motion.

We have considered the issue appellant raises pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find it to be without merit.

The findings of guilty and sentence are affirmed.

Senior Judge JOHNSTON and Judge ECKER concur.