UNITED STATES

v.

**Airman First Class James L. MACKIE,
United States Air Force.**

**ACM S31090.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 2 Feb. 2006.

24 Sept. 2007.

Appellate Counsel for Appellant: Colonel Nikki A. Hall, Lieutenant Colonel Mark R. Strickland, and Major John N. Page, III.

Appellate Counsel for the United States: Colonel Gerald R. Bruce, Major Matthew S. Ward, and Captain Donna S. Rueppell.

Before FRANCIS, SOYBEL, and BRAND, Appellate Military Judges.

OPINION OF THE COURT

SOYBEL, Judge:

Consistent with his pleas, the appellant was convicted of one specification each of absence without leave, operating a motor vehicle while impaired, larceny, and burglary, in violation of Articles 86, 111, 121, and 129, UCMJ, 10 U.S.C. §§ 886, 911, 921, 929. He was sentenced to a bad-conduct discharge, confinement for 7 months, and reduction to E–1. Pursuant to the pretrial agreement, the convening authority approved only so much of the sentence as provided for a bad-conduct discharge, confinement for 6 months, and reduction to E–1. Here we determine whether the previous treatment of the appellant by a staff psychologist was an adequate substitute for a sanity board under Rule for Courts–Martial (R.C.M.) 706. For the reasons stated below we hold it was not.

*Background*

The issue centers on the defense's motion for a sanity board under R.C.M. 706. The convening authority denied appellant's initial request and it was renewed at trial through a Motion for Appropriate Relief. The motion contained affidavits from trial defense counsel and the appellant attesting that the appellant had undergone several memory lapses, episodes of "lost time" and "blackouts;" some lasting "minutes of time." He had also forgotten entire conversations. Trial defense counsel's primary concern was that the appellant's problem might affect his capacity to remember and assimilate her advice, thereby impairing his ability to participate in his own defense. A secondary concern was whether this problem affected the appellant at the time of his alleged criminal conduct.

The appellant, a 20 year old Airman First Class with just over two years of service, was experiencing emotional problems in the months leading up to preferral of charges and his eventual trial. He made at least one suicidal gesture and was referred to the mental health clinic on Barksdale Air Force Base (AFB) after his release from the hospital. He was seen there several times, eventually being assigned to Dr. Agliata, a staff psychologist. Based on that interaction, Dr. Agliata submitted evidence in the form of a stipula-tion of expected testimony and an affidavit that were relied on by the military judge in denying the appellant's request for a sanity board.

*Analysis*

After referral, R.C.M. 706(b)(2) authorizes a military judge to order a sanity board if it appears there is reason to believe the accused lacked mental responsibility for any offense charged or lacks capacity to stand trial. A motion for a sanity board should normally be granted if it is not frivolous and made in good faith. *United States v. Nix,* 36 C.M.R. 76, 1965 WL 4788 (C.M.A. 1965); *United States v. Kish,* 20 M.J. 652 (A.C.M.R.1985). If one is ordered, the board must answer four questions: 1) at the time of the offense, did the accused have a severe mental disease or defect; 2) what was the psychiatric diagnosis; 3) was the accused, at the time of the alleged criminal conduct and as a result of such severe mental disease or defect, unable to understand the nature and quality or wrongfulness of his conduct; and 4) is he currently suffering from a mental disease or defect that renders him unable to understand the nature of the proceedings or to conduct or cooperate intelligently in the defense?

However, a sanity board does not have to be ordered if an adequate substitute has already been conducted. *United States v. English,* 47 M.J. 215 (C.A.A.F.1997); *United States v. Jancarek,* 22 M.J. 600 (A.C.M.R.1986). In denying the appellant's motion for a sanity board in this case, the military judge did not specifically rule that the appellant's prior treatment and the opinion rendered by Dr. Agliata constituted an adequate substitute. However, he did find that the appellant's motion and attached affidavits "ordinarily ... would be enough to issue a sanity board" but, based on Doctor Agliata's opinion that the appellant was competent to stand trial, the military judge denied the defense's motion. Thus, we conclude the military judge made a de facto ruling that an adequate substitute had already been conducted.

In *Jancarek,* the Army Court of Criminal Appeals explained the following fac-

tors should be considered when determining whether a substitute for the R.C.M. 706 board was adequate: 1) participation of a psychologist or someone with similar expertise; 2) performance of a forensic mental examination; 3) knowledge by the performing doctor(s) "of the reason for doubting" the subject's "mental capacity;" 4) determination of whether the subject is capable of standing trial; 5) the ability to examine and cross-examine the performing doctor(s); and 6) the opinion that no further evaluation would be needed to answer the questions required by R.C.M. 706. This list was supplemented in *United States v. Collins*, 41 M.J. 610 (Army Ct.Crim.App.1994) with a seventh factor: a description of the examiner's familiarity with forensic evaluation or participation in previous sanity boards. *See English*, 47 M.J. at 222. Our superior court in *English* also found the above factors identified in both *Jancarek* and *Collins* important in deciding whether a substitute for the R.C.M. 706 board was adequate.

In this case the factors do not measure up to the *Jancarek* standard. As contained in an affidavit submitted by Dr. Agliata and the stipulation of his expected testimony, the following facts were revealed during the appellant's motion for a sanity board.

Dr. Agliata was a staff clinical psychologist with a Ph.D. working at Barksdale AFB who was a recent graduate from a residency program at Wilford Hall Medical Center, Lackland AFB, Texas. He saw the appellant once for an in-briefing, twice for scheduled treatment, and once during a brief walk-in appointment.

Their sessions were not covered by the patient-doctor privilege applicable to R.C.M. 706 boards. Dr. Agliata informed the appellant that UCMJ violations were not covered by the privilege governing their relationship. During treatment the appellant would not discuss the offenses or possible defenses related to his case, as advised by his attorney. He did not tell Dr. Agliata about the problem he was having relating to memory lapses.

Dr. Agliata was associated with one previous sanity board. During his residency he assisted a forensic psychologist who conducted interviews and tests, but Dr. Agliata was not part of the board and "was not privy to the outcome of the board."

When initially asked, Dr. Agliata could not state to a medical certainty that the appellant was competent to stand trial, because 1) he did not spend enough time with him to conduct a forensic examination; and 2) he was not aware of the "rules or standards for a sanity board."

After the government provided Dr. Agliata with the "standards as outlined in R.C.M. 706 for sanity boards" he opined that:

1) The appellant did not have a severe mental disease or defect at the time of the alleged criminal conduct.

2) The appellant had an "Adjustment Disorder with Mixed Disturbance of Emotions and Conduct."

3) The appellant was not "presently suffering from a mental disease or defect rendering him unable to understand the nature of the proceedings against him or to conduct or cooperate intelligently in his defense."

4) The number of sleeping pills the appellant ingested before his automobile accident could be a possible explanation for that one episode of memory loss.

Dr. Agliata was unable to answer the question of whether the appellant, because of a severe mental disease or defect, was able to appreciate the nature and quality or wrongfulness of his conduct at the time of his alleged criminal conduct.[1]

Of the seven *Jancarek* factors, only four at most are met here. The doctor had the required expertise; he made a determination that the appellant was capable of standing trial; and, since counsel agreed to a stipulation of his testimony, we can assume that the requirement for cross-examination was also met.

There also might be an argument that even though the doctor was not told of the appellant's problem with memory lapses, this

1. See R.C.M. 706(c)(2)(C).

third *Jancarek* criterion was also satisfied. The appellant's medical records indicated his short and long-term memory functions were normal. Before Dr. Agliata saw the appellant, another life skills provider, unaware that the appellant was having memory problems and blackouts, as a matter of routine, addressed these details just after the appellant's 11 September 2005 automobile accident. The *Jancarek* court found this situation could satisfy that criterion. However, there, it was the same psychiatrist who testified at trial that happened to evaluate Jancarek for the very problem about which his trial defense counsel expressed concern. He did this even though at the time the doctor was unaware the trial defense counsel expressed apprehension about his client's mental state. In the instant case it was a different provider who wrote the entries regarding the appellant's long and short-term memory. There was no information regarding this life skills provider's background, expertise, experience with sanity boards, or qualifications.

Notwithstanding the above, the arguments that the appellant's treatment was an inadequate substitute for a sanity board outweigh the arguments that it was adequate. Although Dr. Agliata may have had the required medical expertise in terms of forensic evaluations, his previous experience in conducting sanity boards and his familiarity with their standards was next to nil. The doctor in *Jancarek* was experienced in sanity boards, having served on several. Importantly, Dr. Agliata did not conduct a forensic medical examination on the appellant. He did not know of the memory problems the appellant was having at the time he treated the appellant or that his trial defense counsel questioned the subject's "mental capacity." Dr. Agliata also thought further evaluation would be needed to answer one of the ques-

tions required by R.C.M. 706.[2] Finally, in *Jancarek*, the examining psychiatrist specifically answered the question "whether a sanity board would serve any purpose which had not already been accomplished by her examination of appellant" to which the doctor "stated unequivocally ... it would not." *Jancarek*, 22 M.J. at 604. That is clearly not the situation in the instant case.

Given the above, and the clear preference that a sanity board should be ordered when the motion requesting such a board is not frivolous and made in good faith, we find that the treatment and subsequent opinion rendered by Dr. Agliata was not an adequate substitute for a sanity board required under R.C.M. 706.

### Conclusion

The record of trial is returned to The Judge Advocate General to be sent to an appropriate convening authority who may order a sanity board. Pursuant to R.C.M. 706, the board will inquire into whether the appellant is currently mentally competent, whether he was mentally competent at the time of trial, and whether he was mentally competent at the time of his alleged criminal conduct. Depending on the results of the board, the convening authority may order a rehearing or return the record to this Court for further review. If the convening authority finds ordering a sanity board impracticable, the record will be returned to this Court for further review.

<hr/>

**2.** Although it was clear from the record that trial defense counsel was zeroed-in on the appellant's ability to assist in his own defense, she never gave up on the notion that the appellant's memory lapses may also have affected him at the time of the alleged criminal conduct and she wanted the sanity board to evaluate that question as well. This is the very question Dr. Agliata could not answer without further examination of the appellant.