UNITED STATES, Appellee

v

KENNETH R. NIX, Airman Basic, U. S. Air Force, Appellant

15 USCMA 578, 36 CMR 76

[redacted]

No. 18,835

December 30, 1965

[redacted]

*Major Milton E. Kosa* argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph Buchta.*

*Major Thomas J. Connolly* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis.*

## Opinion of the Court

KILDAY, Judge:

Pursuant to his plea of guilty to nine specifications of wrongful appropriation of various privately owned automobiles, the accused was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for two years. The convening authority reduced the period of confinement to eighteen months but otherwise approved the findings and sentence. An Air Force board of review affirmed without change.

We granted accused's petition on the issue of whether the accused was prejudiced by the failure to afford him, in accordance with his request, the psychiatric examination ordered by the convening authority.

During the pretrial investigation, defense counsel, by letter addressed to the commanding officer (who in this case was also the convening authority), requested a psychiatric evaluation of the accused "from Psychiatrists" because "It appears there is reason to believe that at the time of the alleged offenses Airman Nix was intoxicated, and that the said Airman Nix may have an alcoholic problem which is psychological in origin." He further requested that the examining psychiatrist be advised in the preparation of his report to furnish direct answers to each of certain questions propounded in an attachment to his letter. In addition to these answers, defense counsel requested that the psychiatrist prepare a narrative summary which would cover sufficient facts to explain the accused's motivation to commit the alleged offenses.

The investigating officer, through whom the letter was directed, endorsed the request to the Wing Commander. The staff judge advocate, acting "FOR THE COMMANDER," "Approved" the request and "Forwarded [it to the hospital on the base] for necessary action" by a second endorsement to the basic letter. The base medical services director endorsed the letter to the Chief of Flight Medicine Services, Dr. Swift, as follows:

> "1. Defense Counsel Peterson's request may or may not be concurred in by the examining physician. It is the duty of the physician to determine whether or not it is necessary to refer this patient to a psychiatrist.
>
> "2. If, in the opinion of the medical officer, this man is not insane, I will not concur in the request for a 'psychiatric consultation by Psychiatrist.' If there is an opinion that he is insane or there is a reasonable doubt that he is insane, I will concur with the request."

The Chief of Flight Medicine Services interviewed the accused and reported in pertinent part that:

". . . He showed no evidence of loss of contact with reality, hallucinations or inappropriate affect. He is of average intelligence and handles proverbs adequately. I feel that he is sane and is able to distinguish right from wrong, both now and at the time of his actions. I would classify him as a character-behavior disorder with an anti-social type of personality."

In reply to defense counsel's questionnaire, Dr. Swift advised that, from his interview of accused, he concluded the accused was so far free from mental defect or derangement as to be able concerning the particular acts charged to distinguish right from wrong and to adhere to the right; that he possessed sufficient mental capacity to understand the nature of the proceedings and to cooperate with his defense; and that he could form the necessary degree of intent involved in the acts charged but his judgment was impaired.

When this report was made available to the investigating officer, defense counsel objected to its use in lieu of an evaluation made by qualified psychiatrists. The objection was noted and the Article 32 investigation concluded.

At trial, prior to entering a plea for the accused, defense counsel moved for a continuance in order that the accused could be examined by qualified psychiatrists in accordance with the earlier approved request, arguing that the accused's chronic pattern of misbehavior, together with Dr. Swift's diagnosis of the accused, furnished valid grounds for a psychiatric inquiry; that "a reasonable doubt as to the mental capacity of the accused now exists"; and that the hospital commander and examining doctor were without authority to disregard the order of the convening authority to have the accused examined by a psychiatrist. The law officer denied the motion for a continuance.

In military law, the convening authority performs a number of judicial functions. Initially, he has been authorized by Congress, acting within the provisions of Article 1, Section 8, United States Constitution, to appoint and convene courts-martial, including the appointment of the judicial officers necessary to the conduct thereof. Uniform Code of Military Justice, Articles 22–29, 10 USC §§ 822–829. The power of courts-martial to try criminal cases and impose punishment, as delineated in the Code, is like that of any civilian Federal criminal court, an exercise of the sovereign judicial power of the United States. Similarly, under Article 34 of the Code, 10 USC § 834, which Article is analogous to the Federal procedure of preliminary examination and grand jury indictment,[1] the convening authority decides whether to refer charges to trial and the grade of court-martial to which the charges should be referred. Prior to trial, any defense or objection which is capable of determination without trial of the issue may be raised by reference to the convening authority. Manual for Courts-Martial, United States, 1951, paragraph 67a. (Compare Rule 12(b)(1), Federal Rules of Criminal Procedure.) Subsequent to trial, he is empowered to act on the findings and sentence of the court-martial, and while he may approve only such findings of guilty and the sentence, or such part or amount of the sentence, as he finds correct in law and fact, he may, in the exercise of his discretion, disapprove a finding and sentence for any reason or for no reason. See Uniform Code of Military Justice, Article 64, 10 USC § 864; Hearings before House Armed Services Committee, 81st Congress, 1st Session, on H. R. 2498, pages 1182–1184; United States v Massey, 5 USCMA 514, 18 CMR 138. To the extent that he may disapprove entirely the action of the court-martial, the convening authority possesses a judicial power far in ex-

[1] See, Latimer, "A Comparative Analysis of Federal and Military Criminal Procedure," 29 Temple Law Quarterly 1, 5, cited in United States v Roberts, 7 USCMA 322, 22 CMR 112.

cess of that which resides in any other single judicial office. In those instances wherein the convening authority is also the commanding officer, as in the case at bar, he is the "Federal magistrate" to whom application is made for authority to conduct a search (paragraph 152 of the Manual, supra; United States v Hartsook, 15 USCMA 291, 35 CMR 263), the granting or denial of such application being so obviously a judicial act as not to require documentation.

These examples are by no means all of the judicial functions by which the convening authority is empowered to act, but we deem them sufficient to place in proper context the view we take of the granted issue.

Paragraph 121 of the Manual, supra, provides in pertinent part that:

> "If it appears to any commanding officer who considers the disposition of charges . . . or to any investigating officer . . . . , trial counsel, or defense counsel that there is reason to believe that the accused is insane . . . or was insane at the time of the alleged offense . . . , that fact and the basis of the observation should be reported through appropriate channels in order that an inquiry into the mental condition of the accused may be conducted before trial. When the report indicates substantial basis for the belief, the matter will be referred to a board of one or more medical officers for their observation and report with respect to the sanity of the accused. *At least one member of the board should be a psychiatrist.*" [Emphasis supplied.]

This provision of the Manual is in substantial accord with Federal criminal procedure as set forth in Section 4244, Title 18, United States Code.

In the case at bar, defense counsel properly petitioned the convening authority for a psychiatric evaluation of the accused "from Psychiatrists," citing the above-quoted provision of

the Manual and setting forth his reasons therefor. The convening authority, in the exercise of his pretrial judicial function, approved the request and forwarded it to the hospital on the base "for necessary action."

The hospital commander misinterpreted the true import of the convening authority's action for he believed it to be within the province of the examining physician to determine whether or not to refer the patient to a psychiatrist. Further than that, he declared in his endorsement that he would not concur in the request unless, in the opinion of the medical officer, the patient was insane or there was a reasonable doubt as to his sanity.

To the extent that the Manual relates to procedure and modes of proof in court-martial cases, it ▋ has the force of law. Uniform Code of Military Justice, Article 36, 10 USC § 836; United States v Smith, 13 USCMA 105, 32 CMR 105. Paragraph 121 of the Manual, supra, comes within the ambit of that Article. Since pretrial motions are properly addressed to the convening authority, his action in approving the defense request was a judicial order which must be complied with and completed before proceeding with the trial. Sullivan v United States, 205 F Supp 545 (SD NY) (1962).

In *Sullivan,* the court had under consideration the above-cited provision of Federal criminal procedure relating to pretrial inquiries into the mental status of an accused. As the court stated:

> "The essential purpose of section 4244 is to prevent an incompetent person from being brought to trial or imprisoned for the crime charged.[2] It seeks to achieve this objective by a pretrial inquiry when there is reason to doubt an accused's competency to understand the proceedings against him or properly to assist in his defense, by providing for an *examination by a qualified psy-*

---

[2] Perry v United States, 195 F2d 37 (CA DC Cir) (1952); House Report No. 1309, to accompany S. 936, 81st Congress, 1st Session, in 2 U. S. Code Congressional and Administrative News, page 1928 (1949).

*chiatrist,* a report to the Court, a hearing upon notice if incompetency is indicated, and a judicial determination." [*Ibid.,* at page 550.] [Emphasis supplied.]

At time of trial, Sullivan was undergoing psychiatric examination at Bellevue Hospital, New York City, pursuant to an order duly entered in accordance with Section 4244, Title 18, United States Code. Despite the fact that the examination had not been completed and no final or definitive report had been submitted to the court by the psychiatrist, Sullivan was placed on trial, convicted, and sentenced. On motion to vacate the judgment of conviction, the court held this to be reversible error since it denied him a substantial right as provided by the statute, the same having been properly invoked.

In Winn v United States, 270 F2d 326 (CA DC Cir)(1959), where the examination of accused was limited by court order to the question of whether he was competent to understand the proceedings against him and properly assist in his own defense, the court found reversible error since the order did not also include an inquiry into his mental state at the time of the crime, where it was obvious that the trial would revolve about this issue. See also Calloway v United States, 270 F2d 334 (CA DC Cir) (1959), and Leach v United States, 353 F2d 451 (CA DC Cir) (1965).

Underlining the incorrectness of the hospital commander's view, that it is the duty of the examining physician to determine whether an examination by a psychiatrist should be made, is the statement in United States v Sermon, 228 F Supp 972, 974 (WD Mo) (1964), that "the decision to be made pursuant to Section 4244 is a judicial and not a medical determination." And in Krupnick v United States, 264 F2d 213, 218 (CA 8th Cir)(1959), the court stated that:

"The statute [section 4244] does not authorize the court to substitute an examination and report of a general physician for that of a

**582**

psychiatrist in dealing with such a motion."

When the matter was before the law officer, he erred in not directing compliance with the then existing judicial order. He was without authority to proceed pending compliance therewith. Sullivan v United States, supra. Had the convening authority ruled to the contrary, the issue would then have been one for the law officer to consider anew.

As defense counsel argued, the basic issue at that point was noncompliance with this order since the accused was not examined by a qualified psychiatrist. In addition, however, he called the law officer's attention to the fact that the examining physician, who was not a psychiatrist, himself believed the accused had a character-behavior disorder with an antisocial-type personality. This is evidence in addition to that presented to the convening authority, which was also before the law officer, indicating the propriety of invoking the procedure set forth in paragraph 121. Even in the event an inquiry *de novo* on the motion was proper, and we do not believe it was, Federal precedents indicate that the motion should be granted if it is not frivolous and is made in good faith. See Wear v United States, 218 F2d 24, 26 (CA DC Cir)(1954) ; and the annotations to Section 4244, as found in Title 18, United States Code Annotated. While paragraph 121 of the Manual states that, "When the report [to the convening authority] indicates substantial basis for the belief" of insanity a psychiatric examination should be granted, and Section 4244 requires the filing of a motion "setting forth the ground for such belief," we perceive no actual difference between the two requirements. Neither statute specifically provides for a preliminary determination on the issue by the granting authority but only that the moving party have reason to believe and in military law, at least, present a substantial basis for such belief. We decline to believe that the word "substantial" would require the determination of an issue that is essentially

a matter for consideration by highly trained medical personnel and for ultimate decision, on a factual basis, by the court members themselves. As stated in Wear v United States, supra:

"When the claim of insanity is not frivolous, to allow the court to determine that there is no cause to believe that an accused may be insane or otherwise mentally incompetent would be inconsistent with the legislative purpose to provide for the detection of mental disorders 'not * * * readily apparent to the eye of the layman.' "[3] [Ibid., at page 26.]

We hold, therefore, that the accused was prejudiced by the failure to afford him the psychiatric examination ordered by the convening authority prior to trial.

The decision of the board of review is reversed. The record of trial is returned to The Judge Advocate General of the Air Force. A rehearing may be ordered.

Chief Judge QUINN and Judge FERGUSON concur.

---

[3] "Report of Committee to Study Treatment Accorded by Federal Courts to Insane Persons Charged with Crime," as made to the Judicial Conference in preparation of Section 4244, at page 5, as cited in Wear v United States, 218 F2d 24 (CA DC Cir) (1954).