UNITED STATES, Appellee

v

DAVID N. DOBSON, Airman Second Class,
U. S. Air Force, Appellant

16 USCMA 236, 36 CMR 392

No. 19,136

April 29, 1966

*Lieutenant Colonel Milton E. Kosa* argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph Buchta* and *Lieutenant Colonel Joseph B. McMullin.*

*Lieutenant Colonel Thomas J. Connolly* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis.*

Opinion of the Court

QUINN, Chief Judge:

A general court-martial convened at Clinton-Sherman Air Force Base, Oklahoma, convicted the accused of several specifications of taking indecent liberties with young boys, with the intent to gratify his sexual desires, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. It sentenced him to a dishonorable discharge, confinement at hard labor for seven years, and accessory penalties. The convening authority approved the findings of guilty, but modified the sentence by reducing the period of confinement to five years. After a board of review affirmed his action, we granted further review to consider the accused's allegation that he was denied a psychiatric examination by a qualified psychiatrist to his prejudice. See United States v Nix, 15 USCMA 578, 36 CMR 76.

Initially, the accused was charged on May 26, 1965, with a single offense. The offense was reported by the boy's father to the Office of Special Investigations on May 9. The next day the accused was interrogated by an agent, and admitted he committed the act. Apparently, at the request of the Commanding Officer of the accused's organization, 70th Combat Defense Squadron, he was referred to the United States Air Force Hospital at Clinton-Sherman for a medical examination for the purpose of "DIS-

236

CHARGE." The examination was accomplished on May 13–14, and a report thereon was submitted by Captain Richard E. Buckley, a United States Air Force medical officer. In the clinical evaluation section of the report, Dr. Buckley indicated the accused possessed an "[i]mmature personality," and was qualified for discharge. The report was reviewed and approved by Colonel William F. LaFon, Medical Officer and Commanding Officer of the Base medical facility. Apparently, the report was sent to the accused's organization, together with a certificate by Captain Buckley, dated May 18, 1965, to the effect that the accused was found to be free of mental defect or disease; that he possessed the mental capacity to understand the nature and probable consequences of all his acts, and he could understand and cooperate in any proceedings against him. There is no indication when the medical report and certificate were received at the accused's squadron but, as noted earlier, on May 26, 1965, the Commanding Officer signed the charge sheet, and forwarded it to the Commander, 70th Combat Support Group (SAC). On the same day, the latter referred the charge to First Lieutenant Glen F. Shore for investigation under Article 32 of the Uniform Code, 10 USC § 832.

On the afternoon of May 26, 1965, Lieutenant Shore opened the investigation. The accused was represented by personally selected counsel, First Lieutenant David R. Sierra, a member of the Bar of the State of New Mexico. The investigating officer heard oral testimony from several witnesses; received in evidence a number of written statements; and considered the medical report on the accused. He was not satisfied with the latter but, nevertheless, submitted a final report to the Group Commander recommending trial by special court-martial. He also requested "[p]sychiatric evaluation" of the accused.

Colonel Robert T. Calhoun, the Group Commander, did not agree with the Article 32 officer's recommendation for a special court-martial. On May 27, 1965, he transmitted the charge sheet and the Article 32 report to Headquarters, Second Air Force, Barksdale Air Force Base, Louisiana, with a recommendation that the accused be tried by general court-martial. On the same day, in apparent response to the Article 32 investigating officer's request and acting through his staff judge advocate, he forwarded a written request to 857th Medical Group (C) at Clinton-Sherman for a "full psychiatric evaluation" of the accused, in accordance with paragraph 121 of the Manual for Courts-Martial, United States, 1951, and Air Force Manual 160–42, "to determine whether he is legally sane to stand trial." He also requested that the "examining psychiatrist" answer three specified questions as to the accused's mental condition and submit his evaluation directly to Second Air Force at Barksdale. A similar request, dated June 1, 1965, was filed by Lieutenant Sierra.

What happened after the requests for psychiatric evaluation is not clear from the record of the proceedings. Neither party has presented a statement as to the actual course of events. Cf. United States v Solak, 10 USCMA 440, 28 CMR 6; United States v King, 8 USCMA 392, 24 CMR 202; United States v Roberts, 7 USCMA 322, 22 CMR 112. Still, it appears with reasonable certainty that some sort of medical examination of the accused was made between June 7 and June 10. On the latter date, Colonel LaFon replied to Lieutenant Sierra's letter. He observed that the accused had "been evaluated at the request of the Staff Judge Advocate." His comment supports an inference that the accused was psychiatrically evaluated by a "board of one or more medical officers," at least one member of which was a psychiatrist as provided in paragraph 121 of the Manual for Courts-Martial to which Colonel Calhoun had referred. There is no formal report by such a board in the record. The Government, however, suggests that other evidence supports the conclusion that Dr. LaFon is a psychiatrist. For example, at trial, defense counsel offered a stipulation of expected testimony by Dr. LaFon. According to the stipulation, the doctor

would testify that, pursuant to accused's counsel's request, he had examined the accused; as a result of the examination he was of the opinion that the accused suffered from "a character and behavior disorder which can be classified as an 'immature personality.'" The diagnosis and the explanation are normally such as are made by a psychiatrist. See United States v Storey, 9 USCMA 162, 165–166, 25 CMR 424, footnote 2. Also, in the post-trial review, the staff judge advocate noted that the accused had not been given "the full psychiatric evaluation initially requested." The remark implies that a psychiatric evaluation was made, but was deficient. The purported deficiencies were not enumerated. It may be they consisted only of the failure to administer psychological tests. See United States v Wimberley, 16 USCMA 3, 36 CMR 159. If these circumstances are fully credited, the question is not whether the accused was denied a psychiatric examination, as he contends, but whether the examination he received substantially complied with Colonel Calhoun's order. However, disregarding the suggested inferences, and assuming there was no compliance whatever with Colonel Calhoun's order, the omission is not a proper ground for reversal under the circumstances of this case.

The accused contends that our opinion in United States v Nix, supra, requires reversal. That case is inapposite. There, the accused made timely objection to further proceedings until the order for the psychiatric examination was fulfilled. Here, no objection was made at any time prior to appellate review of the conviction.[1] The failure to make timely objection before entry of a plea at trial waives pretrial procedural defects. In the Nix case, we noted that the convening authority's order for a psychiatric examination "must be complied with and completed before proceeding with the trial." Id., page 581. The accused interprets this statement as a determination that the order operates to stay all proceedings in the case. That is not the effect of the order.

In the absence of a statute or rule, an order granting preliminary relief does not ipso facto operate to stay all further proceedings in the case. A stay may be obtained as a sanction for denial of a pretrial right or for noncompliance with the order relating thereto, but it is not a self-operating consequence of the denial or noncompliance. In other words, a stay must be requested. See Rule 37(b)(2), Federal Rules of Civil Procedure; Waterman, "An Appellate Judge's Approach When Reviewing District Court Sanctions Imposed For The Purpose Of Insuring Compliance With Pretrial Orders," 29 FRD 420. A party's failure to invoke the sanctions available against the other party for noncompliance with a pretrial order waives his right thereto. See Hinson v Michigan Mutual Liability Company, 275 F2d 537 (CA 5th Cir) (1960). Discussing the effect of the failure to make timely demand for pretrial rights, we said:

"... Thus, if an accused is deprived of a substantial pretrial right on timely objection, he is entitled to judicial enforcement of his right, without regard to whether such enforcement will benefit him at the trial. At that stage of the proceedings, he is perhaps the best judge of the benefits he can obtain from the pretrial right. Once the case comes to trial on the merits, the pretrial proceedings are superseded by the procedures at the trial; the rights accorded to the accused in the pretrial stage merge into his rights

---

1. Another substantial difference merits mention. In United States v Nix, 15 USCMA 578, 36 CMR 76, the request for a psychiatric examination was made by the convening authority. Colonel Calhoun was not the convening authority. Instead, he forwarded the charge to Second Air Force for disposition. It would appear, therefore, that he did not intend to issue any judicial order in the case which might operate to stay all proceedings until completion of the psychiatric report. In view of our disposition, however, we need not decide whether this difference would itself require a different result from that reached in the Nix case.

at trial. If there is no timely objection to the pretrial proceedings or no indication that these proceedings adversely affected the accused's rights at the trial, there is no good reason in law or logic to set aside his conviction.

"The law demands that an accused, who is aware of error in preliminary procedures, make timely objection to preserve his rights. From one who is not aware of the error until after trial, we can expect no less than a showing that the pretrial error prejudiced him at the trial." [United States v Mickel, 9 USCMA 324, 327, 26 CMR 104.]

Two arguments are advanced by appellate defense counsel to show that noncompliance with Colonel Calhoun's order adversely affected the accused's rights at the trial and, therefore, justifies disregard of the general rule. First, it is contended that the accused was "denied his right to raise a sanity issue"; and, secondly, it is maintained that if there had been a psychiatric report, it might have supported the defense contention at trial that a confession by the accused was the result of psychological coercion. How the failure to comply with Colonel Calhoun's order *prevented* the accused from raising a sanity issue at trial is not made clear. The defense, as noted earlier, introduced a stipulation of expected testimony by Dr. LaFon which indicated that in the doctor's opinion the accused suffered from no mental difficulty other than that of an "immature personality." In addition, Captain Richard K. Fuller, another medical doctor at the Base, testified as a defense witness in mitigation. He, too, said he would classify the accused "as an immature personality," not as a "sociopathic or psychopathic individual." Dr. Fuller based his opinion upon eight or nine lengthy talks with the accused. We have also noted that Dr. Buckley made the same diagnosis. Consequently, it would appear that the accused did not raise mental incompetency as an excuse for the crimes charged only because there was insufficient evidence to support an issue of that kind. As to the present contention

that reversal is required in the interest of justice, it is significant that even now the accused does not suggest he was anything but mentally competent to commit the offenses charged, and to stand trial. As we observed in United States v Frye, 8 USCMA 137, 140, 23 CMR 361, for "all we know, every doctor, military and civilian, who examines the accused and his medical records might agree with the diagnosis that was made" by his own medical witnesses.

The decision of the board of review is affirmed.

Judge KILDAY concurs.

FERGUSON, Judge (dissenting):

I dissent.

In United States v Nix, 15 USCMA 578, 36 CMR 76, this Court held it prejudicially erroneous for the law officer to refuse to direct compliance with a pretrial order for a psychiatric examination, which medical officers had refused to conduct. In so doing, the Court unanimously stated, at page 581:

". . . Since pretrial motions are properly addressed to the convening authority, *his action in approving the defense request was a judicial order which must be complied with and completed before proceeding with the trial.* Sullivan v United States, 205 F Supp 545 (SD NY) (1962)." [Emphasis supplied.]

It also declared, at page 582:

"When the matter was before the law officer, he erred in not directing compliance with the then existing judicial order. *He was without authority to proceed pending compliance therewith.* Sullivan v United States, supra." [Emphasis supplied.]

In my opinion, our decision in *Nix,* supra, in view of the favored position accorded by the military to inquiries into the responsibility and competency of accused persons, leaves no room for the invocation of the doctrine of waiver, and I would not apply it here.

As the accused had been evaluated only by medical officers, the pretrial

investigating officer was not satisfied, in light of the nature of the charges, with the information available to him concerning Dobson's mental state. Both he and the defense counsel sought psychiatric evaluation of the accused, and such was ordered by the officer exercising special court-martial jurisdiction, who had appointed the investigating officer. While the investigating officer's report was at the same time forwarded to the officer exercising general court-martial jurisdiction, notation was made that a complete psychiatric examination had been requested and would be forwarded separately.

The evaluation of the accused was again made by local medical authorities. In this connection, not only does the post-trial review indicate such to have been the case, but the record of trial specifically reflects that accused was not examined by a psychiatrist. Thus, a Doctor Fuller testified an appointment with a psychiatrist had been sought on behalf of the accused, but such was not obtained. Dr. Fuller expressed dissatisfaction with this state of affairs but noted, "[a]pparently they were swamped or something."

As was extensively discussed and pointed out in United States v Nix, supra, pretrial inquiries into the sanity of an accused have long received preferred treatment in the armed services. In that case, we likened pretrial directions for mental examinations by a convening authority to those directed by Federal judges under the provisions of 18 USC, section 4244. They are not the less judicial in nature when ordered by the officer exercising special court-martial jurisdiction over the accused at the request of defense counsel and the pretrial investigating officer. That the latter occupies a judicial capacity and is to be likened unto a committing magistrate is clear beyond cavil. See United States v Cunningham, 12 USCMA 402, 30 CMR 402. It is likewise certain that the commanding officer who appoints him, reviews the report of investigation, and either disposes of the charges locally, or forwards them with a recommendation for trial by general court-martial is likewise acting judicially. Cf. United

States v Hawthorne, 7 USCMA 293, 22 CMR 83; United States v Doherty, 5 USCMA 287, 17 CMR 287.

Such being the case, it was the duty of the medical officers to comply with the commander's order and cause the accused to be evaluated by trained psychiatrists. Absent such compliance, we have outstanding and undetermined the question of accused's responsibility and competency, and an absolute barrier to proceeding against him, so long as the ordered examination has not been conducted. United States v Nix, supra.

Thus, in Krupnick v United States, 264 F2d 213 (CA8th Cir) (1959), it was pointed out, once a judicial determination for the necessity of an examination was made, it was necessary that such be carried out by a psychiatrist, and the failure to do so entitled the accused to relief. The decision to have accused examined was one for the commanding officer to make and not the medical doctors to whom accused was referred. United States v Sermon, 228 F Supp 972 (WD Mo) (1964).

Much is made here of the failure to raise this issue at trial and seek a ruling by the law officer, as was done in the Nix case, supra. But, as we noted in that case, the law officer could not reweigh the facts and determine whether the examination was proper under all the circumstances. We said, at page 582, "He was without authority to proceed pending compliance therewith." Thus, all he could have done here was to suspend the trial and direct compliance with the commanding officer's order. Krupnick, supra. But, as we have held, the accused was already entitled to that on the basis of the commander's judicial direction alone. Thus, the law officer's action on the matter could have added nothing to the case, and the failure to bring the matter to his attention should not control here.

Moreover, there is no substance to the contention that, by making no mention of the matter, defense counsel is armed with reversible error regardless of how the actual trial is conducted. Orders of this nature are as much for

the benefit of the United States as for the accused. Its facilities are used, and the information thereby obtained is furnished it as well as the accused. Its representatives were well aware that the order had not been carried out and that the accused had not received a psychiatric evaluation. It, therefore, as well as the accused, could have brought the matter to the law officer's attention and insured the barrier to trial was removed. As it, in fact, controls access to Government medical facilities and the availability of the experts, there is even more reason to charge it with responsibility for compliance with these orders than the accused, who, standing alone, cannot obtain any services of this nature.

On the whole, then, I would apply our straightforward holding in United States v Nix, supra, to this case. In my opinion, when it declares a trial shall not proceed without compliance with a previously issued order of the convening authority, it means just that and not that it will not proceed, provided the accused's counsel applies to the court-martial for relief to which he is already entitled and which the court cannot, in any way, deny him. A fruitless procedure should not be made the condition of insuring obedience to a perfectly proper judicial direction.

I would reverse the decision of the board of review and remand the case for a rehearing.